THE TOWN OF BETHEL

*v.*

JACOB PRUETT.

*Opinion filed April 17, 1905.*

1. HIGHWAYS—*what constitutes a common law dedication for a highway.* To constitute a common law dedication of land for a highway it is essential that an intention on the part of the proprietor to dedicate the land to the public use and an acceptance of the dedication by the public be established by clear, satisfactory and unequivocal proof.

2. SAME—*a prescriptive right to highway must be based upon specific line of travel.* A prescriptive right cannot be acquired to pass over a tract of land generally, but is limited to a specific way or definite and certain line.

3. SAME—*proprietor must have notice that public claim right to travel over land.* A proprietor of land cannot be charged with acquiescence in the appropriation of a strip of his land for a highway unless he has actual or constructive notice that the public make claim to it.

4. SAME—*description of obstruction is material.* To authorize recovery of a penalty for obstructing the highway it must be shown, by a preponderance of the evidence, that the obstruction erected by the defendant is substantially the same one described in the declaration and in the notice to remove the obstruction.

5. SAME—*what essential to create highway by prescription.* To create a highway by prescription, the use and enjoyment of what is claimed must have been adverse, under claim of right, exclusive, continuous, uninterrupted and with the knowledge of the owner of the land over which the way is claimed.

6. EVIDENCE—*what competent on question of obstructing highway.* Proof that the fence alleged to obstruct the highway is on a

line with the fences along the highway on each side of the alleged obstruction is competent, as tending to characterize the acts of the parties in reference to the controversy.

7. SAME—*when testimony of agreement with road commissioners is competent.* Testimony that the road commissioners had agreed with defendant not to work the road south of forty feet from the north side of the road and that they only wanted a road forty feet wide is competent in a road obstruction case as bearing on the question of acceptance by the public, where the strip of land in controversy lies south of the highway viewed as a road forty feet wide.

8. SAME—*defendant may testify that he never gave express consent to use of land.* Defendant in a road obstruction case may be allowed to testify that he never gave any express consent to the use of the strip of land in controversy as a public highway, it being a question for the jury, under proper instructions, whether his acts and conduct amounted to an implied consent.

APPEAL from the Circuit Court of McDonough county; the Hon. JOHN A. GRAY, Judge, presiding.

This is an action of debt, brought to the September term, 1903, of the McDonough county circuit court by the appellant, the town of Bethel, against the appellee, Jacob Pruett, to recover a penalty for suffering an alleged obstruction to remain in a public highway after being notified by the highway commissioners of said town to remove the same. An amended declaration was filed on February 3, 1904, consisting of a single count, to which the appellee pleaded *nil debet,* and issue was joined accordingly. The trial resulted in verdict and judgment in favor of the appellee, the defendant below. Motion for new trial by plaintiff below was overruled, and judgment was rendered on the verdict against the plaintiff for costs in favor of the defendant, to which exception was taken by the plaintiff. The present appeal is prosecuted from such judgment.

CHARLES J. SCOFIELD, and SWITZER & MILLER, for appellant.

RALPH W. PONTIOUS, and NEECE & SON, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

A public highway runs from the town of Plymouth to the town of Industry, a part of which, running east and west, is on the county line between Schuyler and McDonough counties. The town of Bethel, which is in McDonough county, is immediately north of and adjoining the town of Brooklyn, which is in Schuyler county, Schuyler county being south of McDonough county. The declaration avers that on May 2, 1903, the commissioners of said town met in joint session, and legally set off to the plaintiff, the town of Bethel, the east half of said public highway; that said public highway has ever since February 1, 1902, been a line road of said counties and towns, and ever since May 2, 1903, the plaintiff town has had jurisdiction of the east half of said highway. The appellee owns the north-west quarter of the north-east quarter of section 4 in Brooklyn township, called the Pruett homestead; and he also owns the forty acres immediately east of and adjoining said north-west quarter, to-wit, the north-east quarter of the north-east quarter of said section 4 in Brooklyn township. The public road or highway on the north side of the Pruett land runs on in a westerly direction to the village of Plymouth. On the west side of the Pruett land a public highway called the Brooklyn road comes from the south and runs north, until it intersects the highway in question at the north-west corner of the Pruett land. As we understand the evidence, the highway in question, lying north of the Pruett land, and running east and west, is some forty feet wide west of the Brooklyn road, and about forty feet wide east of the north-west quarter of the north-east quarter of section 4. Appellee does not deny that there is a public highway lying north of his land and running the whole extent of it, which is from forty to forty-three feet wide, but denies that such public highway embraces the strip of ground here in controversy.

The appellant claims that the public highway north of the north-west quarter of the north-east quarter of said section 4, which runs east and west, and connects with the Brooklyn road on the west side of appellee's land,—said Brooklyn road running north and south,—is some sixty-six or seventy feet wide, instead of having a width of from forty to forty-three feet.   It seems that persons, traveling north on the Brooklyn road, would turn east through said north-west quarter across a space twenty-six feet wide at the west side of appellee's land, instead of going north and traveling east upon a strip of land only forty or forty-three feet wide north of appellee's tract of land.   As far back as 1867 or 1870 there had been a rail fence running north-east from the Brooklyn road, and beginning some sixty-six or seventy feet south of the north line of the highway running east and west upon the north side of appellee's land.   Subsequently, a hedge fence was planted south of the rail fence, and the rail fence was gradually removed or disappeared.   In the spring of 1902 appellee built a fence with posts and wire, beginning on the west side of his land at the Brooklyn road at a point twenty-six feet north of the old rail fence, or hedge fence, and running east about sixty-six rods and five or ten feet, but not running the full distance of eighty rods, which was the length of appellee's tract of eighty acres.   This wire fence, running eastward, joined with the hedge fence which ran north-east and south-west.   The tract of land in dispute between the parties is a strip of ground wedge-like in shape, being twenty-six feet wide at the west end and running to a point at the east end.   This wire-and-post fence is alleged by the appellant town to be an obstruction to the highway, while the contention of the appellee is that the strip in question is a part of his farm.

The question then is, whether the highway, running east and west north of the appellee's land, is only forty, or from forty to forty-three feet wide, or whether it diverges from a width of about forty feet at the north-east corner of the

north-west quarter of the north-east quarter of said section 4 and runs south-west to a point on the Brooklyn road twenty-six feet south of the wire fence built by appellee.

The appellant town claims that the public highway includes the wedge-like strip in question, and that such strip has become a part of the public highway by dedication and by prescription. Appellee, who has owned the property in question ever since the year 1867, swears that it was never his intention to dedicate this strip to the public as a part of the highway in question, while the appellant claims that a dedication of such strip by the appellee is established by his acts and acquiescence. The main circumstance, relied upon by the appellant to show a dedication by appellee, is the fact that appellee permitted the rail fence to remain on the south side of the strip, and set out a hedge fence upon the south side of the rail fence. Appellee claims that no acts on the part of the appellant are shown, which tend to establish any acceptance by the public or by the appellant, as the representative of the public, of a dedication of the strip in question by appellee. Appellant also claims that the strip in question has been acquired by the public, as a part of the highway, by prescription; that is to say, that, with the knowledge and acquiescence of appellee, the public were permitted to drive upon this strip as a part of the public highway for a period of twenty years, or more. Whether or not there was a dedication of the strip in question as a part of the highway, or whether or not the public acquired the same by prescription, were questions which were submitted to the jury under instructions, defining what acts and circumstances constitute dedication and what amount of user constitutes prescription. The jury upon the trial below, and the trial court, by overruling the motion for new trial and entering judgment upon the verdict of the jury, have settled the questions of fact against the contention of the appellant, that the strip in question is a part of the public highway.

*First*—Appellant contends, however, that, even if there is no reason for disturbing the verdict upon the ground that

it is not sustained by the evidence, yet the trial court committed certain errors in the matter of giving and refusing instructions, and admitting and excluding testimony. The eleventh instruction, given for the appellee, the defendant below, is complained of as being erroneous, upon the alleged ground that it authorizes the jury to determine the question of an intention to dedicate on the testimony of the appellee alone, instead of requiring the jury to base their finding upon this point upon all the evidence bearing on the question. The appellee testified upon the trial, that he never intended to dedicate the strip in question to the public use. This evidence was properly admitted. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561). It is true, however, that, where the owner swears as to what his intention was in such cases, he can be contradicted by his acts and conduct, or declarations. (Ibid.) The first part of the instruction correctly told the jury that, where a dedication is relied upon to establish a road, the acts of both the donor and the public authorities should be unequivocal and satisfactory as showing the design to dedicate on the one part, and to appropriate to public use on the other. (Ibid.) The latter part of the instruction told the jury that, if they believed there was no intention by the appellee to dedicate this contested strip of land to the public use as a right of way, then there could be no legal highway over said strip by dedication. It is the law, as announced by this court, that, in order to constitute a dedication at common law, it is essential that an intention on the part of the proprietor of the land to donate the same to the public use, and an acceptance thereof by the public, be established by the evidence, and that the proof of these facts must be clear, satisfactory and unequivocal. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra*).

The first sentence of the instruction, by calling the attention of the jury to the acts of the parties, excluded the idea that they were to determine the intention of the proprietor

of the land from his testimony alone as to what his intention was. They were directed by the language of the instruction to consider his acts and conduct as proof of such intention, as well as his own statement upon the subject. It is true that the last clause of the instruction is technically incorrect in requiring the jury to believe, without requiring them to believe from the evidence. The instruction should have told them that their belief must be based upon the evidence. (*Rankin* v. *Sharples,* 206 Ill. 301; *Cunningham* v. *People,* 210 id. 410). But in view of the language of the instruction, as already indicated, and of the language of other instructions which were given, we cannot see that the appellant was prejudiced by this technical error The fifth instruction, given for the appellant, told the jury that no specific length of possession by the public or particular form or ceremony was necessary to constitute dedication, but that it was only necessary that the owner should definitely dedicate and give the land for the purpose of a highway, either by written declaration, or by his acts. The eleventh instruction, given for the appellant, told the jury that, in determining the issues in the case, they should take into consideration "the whole of the evidence and all the facts and circumstances proved on the trial." The twelfth instruction also given for appellant told the jury that it was their duty "to consider the whole of the evidence and to render a verdict in accordance with the weight of all the evidence in the case." All the instructions must be considered as one charge, and, when they are so read, the jury were sufficiently cautioned to base their finding upon the evidence.

*Second*—It is said that the court erred in giving to the jury the seventeenth instruction, which was given for the appellee, to the effect that a prescriptive right cannot be acquired to pass over a tract of land generally, but such right must be confined to a specific way, or definite, certain and precise line. The instruction correctly stated the law, as the same is laid down in the text books and authorities. Elliott

in his work on Roads and Streets, (2d ed. sec. 176,) says:
"The public cannot acquire a prescriptive right to pass over
land generally, and where a highway is claimed by prescrip-
tion, a certain and well defined line of travel must be shown;
but a slight deviation on account of some obstacle will not
affect the right. It is sufficient if the line of travel has re-
mained substantially unchanged, although at times there may
have been a slight deviation in order to avoid 'bad roads,' or
temporary obstructions."

In the case at bar, there was testimony, tending to show
that the travel, which was shown to have passed over the
strip here in controversy, was due principally to the fact,
that there was a pond in one part of the highway and a mud-
hole in another part, which made it necessary for persons,
traveling along the highway north of appellee's land, to di-
verge from the main highway in order to avoid these obstruc-
tions. In *Township of Madison* v. *Gallagher,* 159 Ill. 105,
we said: "The prescriptive right must be confined to a spe-
cific or definite, certain and precise line or way." In *O'Con-
nell* v. *Chicago Terminal Railroad Co.* 184 Ill. 308, we said:
"Nothing is better settled than that a highway by prescrip-
tion is not created by public travel over the land generally,
but that the line of travel must be within definite limits."
These limits may often be defined by fences on the side of the
road, but they may be defined otherwise than by fences. In
the case at bar, the testimony tends to show that there were
two roadways, one north and one south, and that between
the two was a growth of underbrush. The evidence is not
clear that the turning aside from the main road and passing
over the strip in question were not for the mere temporary
purpose of avoiding the obstructions referred to. As was
said in *Town of Brushy Mound* v. *McClintock,* 150 Ill. 129:
"It is unreasonable to suppose that road authorities would
claim, or a property holder suspect, that a public highway
was to be located on the tortuous line of the road in ques-
tion." The divergence of travel here over the strip in ques-

tion made the highway at the point indicated a tortuous, instead of a straight and direct one. The fact of the construction of the hedge fence at the point named by the appellee is a strong circumstance in support of appellant's theory of the case, but it was only one circumstance to be taken into consideration by the jury in connection with all the other circumstances developed by the evidence. The evidence was conflicting as to the extent of the travel over the strip in question, and under the instructions it was a matter for the jury to determine.

*Third*—It was not only necessary to show an intention to dedicate on the part of the appellee, but it was also necessary to prove the acceptance of the dedication by the public. The proof, introduced for the purpose of showing such acceptance, was far from being conclusive in its character. Very little work was done by the public authorities upon the strip in question, and it is not altogether clear that such work was done by the proper authorities. The strip in question was located in Brooklyn township in Schuyler county, and whatever work may have been done upon the land in controversy was done by the authorities of the town of Bethel in McDonough county. The proof shows, and the declaration alleges, that the town of Bethel had no jurisdiction over any part of the road until a portion of the road was allotted to that town on May 2, 1903. In addition to this, the appellee could not be charged with acquiescence in the appropriation of the strip in question to the purposes of a public highway unless he had notice that the public made claim to it, or had notice of such facts and circumstances as would have affected him with knowledge of such claim on the part of the public. It is not clear from the testimony that appellee had any such notice or knowledge. "Express notice is not necessary, but there must be such conduct on the part of the public authorities as to reasonably inform the owner that the highway is used under a claim of right." (*Town of Brushy Mound* v. *McClintock,* 150 Ill. 129).

*Fourth*—It is said by the appellant that the third instruction, given for appellee, is erroneous, and in that connection that the trial court erred in refusing to give the fifteenth instruction asked by the appellant. The third instruction told the jury that the description of the obstruction complained of, as described in the declaration and notice to remove the same, was material, and that, before the plaintiff could recover, it must show by a preponderance of the evidence that the appellee obstructed the highway by erecting the fence described in the declaration and notice, and that such fence was in the public highway substantially as set out in the notice and declaration. This instruction announces the law substantially in accordance with the views expressed in *Farlow* v. *Town of Camp Point*, 186 Ill. 256, where it appeared that the notice served described the fence as running the whole length of the quarter section, and the appellant was there required to remove the whole fence, and the written complaint charged that the obstruction consisted of the whole fence, but the instruction directed a verdict against him if any part of the fence was in the public road. Substantially the same state of facts exists here. The obstruction is described in the notice as running the whole length of the two quarter sections, to-wit, eighty rods, but the obstruction shown to exist only extended the distance of sixty-six rods and ten feet. The fifteenth instruction asked by the appellant was properly refused as expressing a contrary doctrine to that announced in the third instruction given for appellee.

*Fifth*—Complaint is made that the trial court refused the sixteenth instruction asked by the appellant. There was no error in the refusal of this instruction, because, while assuming to set forth the necessary elements of a highway by prescription, it neglects to state that the public user must be under a claim of right. "In order to establish a way by prescription, the use and enjoyment of what is claimed must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquies-

cence of the owner of the land in or over which the easement is claimed." (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra.*) In *O'Connell* v. *Chicago Terminal Railroad Co.* 184 Ill. 308, we said: "In order to establish a highway by prescription, the public use must be adverse, uninterrupted, exclusive, continuous, and under claim of right."

Some other objections are made to instructions given for the appellee, but after a careful consideration of such instructions in connection with the evidence to which they were intended to apply, we discover no material error in them.

*Sixth*—Complaint is also made of the action of the court in the admission and exclusion of testimony. It is said that the court should not have permitted a witness, named Willy, to state how the post-and-wire fence built by appellee stood in line with the fence running west of it   It appears that the post-and-wire fence, built by appellee, corresponded and was in line with the fence running west across the Brooklyn road. In other words, the evidence showed that the highway west of the Brooklyn road and also east of the north-west quarter of the north-east quarter of section 4, was only forty, or between forty and forty-three feet, wide. This testimony had a tendency to show that the intended width of the highway throughout its whole length was only about forty feet, and, consequently, that the widening of it to the distance of sixty-six or seventy feet on the west side of appellee's property was only temporary, and occasioned by the necessity of avoiding an obstruction in the main road. The proof as to the correspondence of the fence, alleged to be an obstruction, with the fences east and west of it, was legitimate as characterizing the acts of the parties in reference to the controversy. In *Town of Brushy Mound* v. *McClintock, supra,* it was held that, in determining the question whether or not a road was a highway by prescription, and especially where it was at least doubtful whether the user over a party's land was adverse, under a claim of right, or merely by permission,

it was proper to show how the public authorities treated the road at other places.

*Seventh*—Objection is also made to some testimony to the effect that the road commissioners agreed with appellee that they would not work the road south of forty feet from the north side of the road, and told him that they only wanted a highway forty feet wide. This testimony was competent, as bearing upon the question of acceptance of the strip as dedicated to the public, and upon the claim of right over the strip on the part of the public authorities. If they only wanted a highway forty feet wide, they certainly could lay no claim to the strip here in controversy, because it lies south of the highway, viewed as a road forty feet wide, and appellee makes no objection to the appropriation of sufficient land by the public to constitute a highway forty feet wide.

*Eighth*—It is also said that it was error in the trial court to permit appellee to testify that he had never given any consent in any way to the travel over this strip by the public, or to its use by the public for the purposes of a highway. An examination of this portion of the evidence will show that the consent referred to was an express consent. The statement of the appellee, that he never gave any express consent to the use of the strip as a highway, was not the statement of a conclusion. It was for the jury to determine under the instructions whether, in the absence of express consent, his acts and conduct amounted to an implied consent.

We do not deem it necessary to discuss any of the other numerous objections made in regard to the testimony. We have examined and carefully considered them, and are of the opinion that the action of the trial court in reference thereto worked no harm to the interests of the appellant.

For the reasons above stated, the judgment of the circuit court of McDonough county is affirmed.

*Judgment affirmed.*